UNITED STATES DISTRICT COURT      O
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| CIRO CAICEDO-OBANDO § | |
| § | |
| Petitioner § | |
| VS. § | CIVIL ACTION NO. L-09-119 |
| § | CRIMINAL CASE NO. L-08-226-2 |
| UNITED STATES OF AMERICA § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Ciro Caicedo-Obando's ("Caicedo") Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. Section 2255. [Dkt. No. 1].[1] Having duly considered the motion, record, and governing law, the Court **DISMISSES** Caicedo's Motion with prejudice.

**I. BACKGROUND**

In 2008, a federal grand jury in Laredo, Texas, returned a four-count indictment against Caicedo. [Cr. Dkt. No. 23]. Count One of the indictment charged that on or about January 21, 2008, Caicedo, as well as two co-defendants, conspired and agreed together and with other persons to possess with intent to distribute a quantity in excess of five kilograms of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(A). [*Id*.]. Attorney Andres Aaron Ramos was initially appointed to represent Defendant. [Cr. Dkt. No. 22]. However, Attorney Gladys Osagiede was subsequently retained by Caicedo as his counsel of record. [Cr. Dkt. No. 72].

On April 18, 2008, Caicedo entered into a plea agreement, which contained a provision stating that he agreed to waive his right to appeal and/or collaterally attack his resulting

---

[1] "Dkt. No." refers to the docket number entry for the Court's electronic filing system. The Court will cite to the docket number entries rather than the title of each filing. "Dkt. No." will be used to refer to filings in civil case number 5:09-119. Unless otherwise noted, "Cr. Dkt. No." will be used to refer to filings in criminal case number 5:08-226-2.

conviction and sentence. [Cr. Dkt. No. 80]. In pertinent part, his plea agreement provides as follows:

> In exchange for the concessions made by the Government in this agreement, the Defendant expressly waives the right to contest and/or appeal, **either directly or collaterally**, his/her guilty plea, conviction, sentence, and/or detention by means of **ANY** post-conviction proceeding whatsoever. **Such waiver expressly includes, and Defendant expressly agrees not to file, ANY DIRECT and/or COLLATERAL attacks on Defendant's guilty plea, conviction, sentence, and/or detention pursuant to any statute, law, procedure, or Constitutional provision whatsoever, including, without limitation, Title 18, U.S.C., § 3742 and Title 28, U.S.C. § 2255.**
>
> In waiving those rights, Defendant is aware that Title 28, U.S.C. § 2255, affords the right to contest or "collaterally attack" aconviction (sic) orsentenceafter (sic) the conviction or sentence has become final. Understanding this, Defendant agrees to waive the right to "collaterally attack" his/her conviction and/or sentence in any manner whatsoever, including Title 28, U.S.C. § 2255. Defendant is also aware that Title 18, U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed and/or the manner in which such sentence was determined. Understanding this, Defendant agrees to waive the right to appeal the sentence imposed or the manner in which it was determined on **any grounds whatsoever, including, without limitation, those set forth in Title 18 U.S.C. § 3742.**

[*Id.*, ¶ 10 (emphasis in original)]. Pursuant to other terms of the plea agreement, Caicedo decided to forego trial and appeared before the Court for re-arraignment on April 18, 2008.

During Caicedo's re-arraignment, the Court admonished him as to the nature of the charge in Count One of his indictment, the terms of his plea agreement, and the consequences of his plea. [Digital Recording of April 18, 2008 Re-arraignment ("R. Rec.") at 9:30-10:01 a.m.]. The re-arraignment was conducted in English but was translated into Spanish, and, after acknowledging that he understood his rights and the terms of his plea agreement, Caicedo entered a plea of guilty to Count One of his indictment. [*Id.*]. Thereafter, the Court sentenced Caicedo to a term of two-hundred sixty-two (262) months of imprisonment, as well as five years of supervised release. [Minute Entry of November 3, 2008 & Cr. Dkt. No. 130]. Judgment was

entered on November 18, 2008. [Cr. Dkt. No. 130].

On November 9, 2009, Caicedo filed the instant motion.[2] [Dkt. No. 1]. Caicedo contends that he received ineffective assistance of counsel. [*Id*. at 7]. In support of this claim, he alleges that his counsel advised him to sign the plea agreement without having the agreement translated into Spanish; that counsel failed to explain the agreement to him; that his second assigned counsel did not have the Court's questions translated into Spanish; and that his first assigned counsel did not follow through with an "initial verbal agreement." [*Id*.]. In essence, Caicedo contends that he entered his plea without an understanding of the nature of the charge against him, or of the consequences of his plea. [*Id*.]. As support, he alleges that his first assigned counsel told him he would receive only five years. [*Id*.]. And though he acknowledges that he answered "yes" when the Court asked him questions (presumably during his re-arraignment), he alleges that he was nervous and did not actually understand the questions being asked of him. [*Id*.].

## II. DISCUSSION

### A. Standard Governing § 2255 Motions

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam) (citing *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. 1981)). Generally, § 2255 claims fall under four categories: (1) constitutional issues; (2) challenges to the district court's jurisdiction to impose the sentence; (3) challenges to the length of a sentence in excess of the statutory maximum; and (4) claims that the sentence is otherwise

---

[2] The motion itself is dated November 4, 2009, but contains no certification of its deposit into the U.S. Postal System. Thus, the Court determines that it was filed when stamped by the U.S. Postal System on November 9, 2009.

subject to collateral attack. 28 U.S.C. § 2255 (2006); *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995) (citations omitted). After conducting an initial examination of the petition, the Court must dismiss it if "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." 28 U.S.C. § 2255, PROC. R. 4(b).

### B. Whether Caicedo Waived His Right to Collaterally Attack His Conviction

Caicedo argues that he received ineffective assistance of counsel, a claim of constitutional proportion. However, the Court must first determine whether Caicedo's waiver of his right to attack his conviction precludes discussion of this claim. A defendant may waive the right to appeal and collaterally attack a conviction and sentence, so long as the waiver is both knowing and voluntary. *See, e.g., United States v. Bond*, 414 F.3d 542, 544 (5th Cir. 2005) (citing *United States v. McKinney*, 406 F.3d 744, 746 (5th Cir. 2005) ("We apply normal principles of contract interpretation when construing plea agreements.")); *United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002); *United States v. Robinson*, 187 F.3d 516, 517-18 (5th Cir. 1999); *United States v. Dees*, 125 F.3d 261, 269 (5th Cir. 1997).

A district court may examine the validity of a waiver when a defendant files a motion to collaterally attack his conviction or sentence. *See United States v. Boyd*, No. 3:06-cv-1365-H, 2007 WL 900949, at *3 (N.D.Tex. Mar. 23, 2007); *United States v. Baty*, 980 F.2d 977, 979 (5th Cir. 1992) ("We think that a defendant's waiver of her right to appeal deserves and, indeed, requires the special attention of the district court."). The Fifth Circuit conducts a two-step inquiry to determine whether an appeal-waiver provision in a plea agreement bars appeal: (1) "whether the waiver was knowing and voluntary"; and (2) "whether the waiver applies to the circumstances at hand, based upon the plain language of the agreement." *Bond*, 414 F.3d at 544. If the plea or waiver itself was knowing and voluntary, "the guilty plea sustains the conviction

and sentence and the waiver can be enforced." *White*, 307 F.3d at 343-44. However, a defendant may circumvent a waiver of appeal and claim ineffective assistance of counsel if he alleges that counsel's ineffective assistance directly affected the validity of that waiver or the plea itself. *Id*. at 343.

In the instant case, Caicedo contends, first, that his counsel's ineffective assistance affected the validity of his plea agreement. [Dkt. No. 1 at 7]. In support, he alleges that his counsel did not have the Court's questions translated into Spanish; and that he was advised to sign the plea agreement without having it translated into Spanish, and without having the agreement explained to him. [*Id*.].

A careful review of the record reveals no evidence that Caicedo unknowingly or involuntarily waived his right to collaterally attack his conviction. First, by signing the plea agreement, Defendant acknowledged that he reviewed it with his counsel and understood its terms, including the provision in paragraph ten that he would not collaterally attack his conviction. [Cr. Dkt. No. 80, ¶ 10]. During the re-arraignment, Caicedo affirmed, under oath, that he signed the plea agreement. [Digital Recording of April 18, 2008 Re-arraignment ("R. Rec.") at 9:31 a.m.]. Contrary to Caicedo's allegation, the Court asked him whether his plea agreement was translated in Spanish. The Court stated as follows: "[t]he document is in English, and we have been conducting these proceedings in Spanish. Before you signed the document, was it translated for you in Spanish?" [*Id*. at 9:39 a.m.]. Caicedo replied affirmatively. [*Id*.]. The Court then explained that, under the terms of the agreement, Caicedo was waiving his right to appeal and collaterally attack his conviction. [*Id*. at 9:40 a.m.]. The Court explained these rights to Caicedo, and Caicedo affirmed that he understood such rights. [*Id*. at 9:41-9:42 a.m.]. The Court then reiterated that, under the agreement, Caicedo was waiving his right to collaterally

attack his sentence. [*Id*. at 9:42-9:48 a.m.]. When asked whether he understood such waiver, Caicedo replied "yes, your Honor." [*Id*. at 9:48 a.m.]. Caicedo then affirmed that he wished to waive his right to collaterally attack his sentence. [*Id*.]. It is clear, therefore, that Caicedo knowingly and voluntarily agreed to waive his right to collaterally attack his conviction and sentence. Caicedo's ineffective assistance claim as to this issue is without merit.

        C.        **Whether Caicedo Entered His Plea Without Understanding the Nature of the Charge and the Consequences of His Plea**

Next, Caicedo attacks the validity of his guilty plea. Specifically, he asserts that his guilty plea was obtained "without [his] understanding of the nature of the charge and the consequences of the plea." [*Id*.]. Because a plea relinquishes constitutional rights of a defendant, "the Constitution insists . . . that the defendant enter a guilty plea that is 'voluntary.'" *United States v. Ruiz*, 536 U.S. 622, 628-29 (2002) (citations omitted). In analyzing whether a plea was voluntary, courts "have focused on three core concerns: absence of coercion, the defendant's understanding of the charges, and a realistic understanding of the consequences of a guilty plea." *United States v. Gracia*, 983 F.2d 625, 627-28 (5th Cir. 1993); *see also* FED. R. CRIM. P. 11. Federal Rule of Criminal Procedure 11 provides procedural safeguards to ensure that these three core concerns are addressed. Rule 11 requires the Court to "address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises." *See* FED. R. CRIM. P. 11(b)(2).

In the instant case, the record reveals that Caicedo understood the charge pending against him. At the start of the re-arraignment, the Court reviewed the charge contained in Count One of Ceicedo's indictment. [R. Rec. at 9:30 a.m.]. Caicedo affirmed that he understood he was entering a plea as to this particular charge. [*Id*. at 9:32 a.m.].

It is also apparent that Caicedo understood the consequences of his plea. The Court

asked Caicedo whether he understood that he had a right to plead not guilty, and Caicedo replied affirmatively.  [*Id*.].  The Court then explained that, if Caicedo pled not guilty, his case would be set for a jury trial, and that he would enjoy the right to an attorney; the right to cross examine witnesses; the right to call his own witnesses; the right to testify; and also the right not to testify.  [*Id*.].  Caicedo indicated that he understood such rights.  [933].  The Court then asked Caicedo whether he understood that—if he entered a plea of guilty—he would waive such rights.  [*Id*.].  Caicedo replied affirmatively.  [*Id*.].  Caicedo then indicated that, understanding these rights, he wished to give up such rights and enter a plea of guilty.  [*Id*.].  Next, the Court asked Caicedo whether he understood that he faced a minimum term of ten years imprisonment, and a maximum term of life in prison.  [*Id*. at 9:34 a.m.].  Caicedo replied affirmatively.  [*Id*.].

In further support of his claim, Caicedo alleges that his original counsel told him that he would only receive five years.  [Dkt. No. 1 at 7].  And he asserts that "first assigned attorney did not follow through with the initial verbal agreement."  [*Id*.].  This claim is completely without merit as Caicedo discharged his appointed attorney and retained his own counsel.  [Cr. Dkt. Nos. 70 & 72].  Whatever the original attorney may have said, Caicedo's retained attorney represented Caicedo at the time of the plea agreement.  The original attorney had no involvement at such time.

Caicedo also appears to suggest that his plea was not valid because he was nervous when he responded to the Court's questions, and also because he did not understand the Court's questions.  [*Id*. at 8].  However, bare assertions do not overcome his sworn statements in open court, which carry a strong presumption of veracity.  *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *United States v. Lampazianie*, 251 F.3d 519, 524 (5th Cir. 2001).  Indeed, the Fifth Circuit affords "great weight to the defendant's statements at the plea colloquy."  *United States v.*

*Cothran*, 302 F.3d 279, 282-84 (5th Cir. 2002).

Here, during the re-arraignment, the Court asked Caicedo whether, aside from representations made in his plea agreement, anyone made him any other promises in exchange for his plea of guilty, and whether anyone forced or coerced him into pleading guilty. [R. Rec. at 9:49 a.m.]. Caicedo replied "no, your Honor," to both questions. [*Id*.]. The Court then asked Caicedo whether he wished to plead guilty freely and voluntarily, and Caicedo replied affirmatively and entered a plea of guilty. [*Id*.]. In light of his statements made before the Court, under oath, Caicedo cannot persuasively argue that his plea was affected by promises outside of his plea agreement, or that did not understand the questions being asked of him.

Finally, in further support of his claim that he did not understand the nature and consequences of his plea, he again alleges that he did not understand questions the Court asked, and that his plea agreement was not translated into Spanish. As discussed above, these allegations are plainly without merit. The Court thus finds that Plaintiff's plea was entered voluntarily; that is, the record shows that Caicedo understood the nature of the charges against him and the consequences of his plea.

## III.   CONCLUSION

For the reasons stated above, Caicedo's section 2255 motion is **DISMISSED** with prejudice. [Dkt. No. 1]. Also, should Caicedo seek a certificate of appealability, such is

**DENIED**. Final Judgment shall issue under separate cover.

IT IS SO ORDERED.

DONE this 11th day of February, 2010, in Laredo, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE